**UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

---

**C.A  No. 22-1648**

---

**Q.T., et al.,
Appellants**

**v.**

**Pottsgrove School District,
Appellee**

---

On Appeal from the United States District Court
Eastern District of Pennsylvania Civil No. 2:20-cv-04450-CDJ
District Judge: Honorable C. Darnell Jones, II

---

**BRIEF OF APPELLEE,
POTTSGROVE SCHOOL DISTRICT**

---

Mark W. Cheramie Walz, Esquire
Atty ID - PA 204356
Rose E. McHugh, Esquire
Atty ID – PA 316260
SWEET, STEVENS, KATZ & WILLIAMS LLP
331 Butler Avenue; POB 5069
New Britain, Pennsylvania 18901
*t* (215) 345-9111 / *f* (215)348-1147

Attorneys for Appellee,
Pottsgrove School District

## CORPORATE DISCLOSURE STATEMENT AND STATEMENT OF FINANCIAL INTEREST

Pursuant to Fed. R. App. P. 26.1, Appellee, Pottsgrove School District, makes the following disclosure:

1) For non-governmental corporate parties please list all parent corporations:

   **None.**

2) For non-governmental corporate parties please list all publicly held companies that own 10% or more of the party's stock:

   **None**.

3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests.

   **None**.

4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

   **Not a Bankruptcy Proceeding.**

SWEET, STEVENS, KATZ & WILLIAMS LLP

Date: October 31, 2022        By: _____ */s/ Mark W. Cheramie Walz* _____
                              Mark W. Cheramie Walz, Esquire – PA 204356
                              Rose McHugh, Esquire – PA 316260

                              Attorneys for Appellee,
                              Pottsgrove School District

# TABLE OF CONTENTS

TABLE OF CITATIONS ............................................................. 1

I. INTRODUCTION ............................................................. 3

II. STATEMENTS AND SUMMARIES.................................... 4

    A. SUBJECT MATTER AND APPELLATE JURISDICTION.... 4

    B. STATEMENT OF RELEVANT FACTS ........................ 4

    C. ISSUES................................................................... 6

        1. Did the District Court properly uphold the decision of the administrative hearing officer that Q.T. is not H.P-B.'s Parent under the IDEA? Proposed Answer:  YES..................................... 6

        2. Did the District Court properly give *Chevron* deference to the Department of Education's Regulation identifying who may serve as a parent? Proposed Answer:  YES..................................... 6

    D. RELATED CASES AND PROCEEDINGS............................ 6

    E. CONCISE STATEMENT OF THE CASE.............................. 6

III. STANDARD OF REVIEW.................................................. 7

IV. ARGUMENT.................................................................... 8

    A. The District Court Properly Found that Q.T. is not H.P.-B.'s Parent under the IDEA Regulation..................... 8

        1. The Regulation at Issue................................. 8

        2. Application of the Law ................................. 12

        3. Appellants' Claims of Error.......................... 12

    B. The District Court Properly Gave *Chevron* Deference to the Department of Education's Regulation............................. 16

    C. E.E. and F.P. Are Not Proper Plaintiffs/Appellants................. 18

    D. Appellants Have a Straightforward Remedy.......................... 18

V. CONCLUSION................................................................. 19

CERTIFICATIONS

# TABLE OF CITATIONS

**Federal Cases**

*Batchelor v. Rose Tree Media Sch. Dist.*,
759 F.3d 266 (3d Cir. 2014)........................................................................ 18

*Bd. of Educ. v. Rowley*,
458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)................................. 7

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837 (1984) .......................................................................... 6, 16, 17

*D.S. v. Bayonne Bd. of Educ.*,
602 F.3d 553 (3d Cir. 2010)........................................................................ 7

*Driessen v. Lockman*,
No. 11-23081-CV, 2012 WL 12892214 (S.D. Fla. June 8, 2012),
aff'd, 518 F. App'x 809 (11th Cir. 2013)..................................................... 10

*Encino Motorcars, LLC v. Navarro*,
579 U.S. 211 (2016)................................................................................... 16

*Fuentes v. Bd. of Educ. of City of New York*,
569 F.3d 46 (2d Cir. 2009).......................................................................... 10

*P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*,
585 F.3d 727 (3d Cir. 2009)........................................................................ 7

*Ridley Sch. Dist. v. M.R.*,
680 F.3d 260 (3d Cir. 2012)........................................................................ 7

*S.H. v. State-Operated Sch. Dist. of City of Newark*,
336 F.3d 260 (3d Cir. 2003)........................................................................ 7

*Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.,*
381 F.3d 194 (3d Cir. 2004)........................................................................ 7

*Smith v. Meeks*,
225 F. Supp. 3d 696 (N.D. Ill. 2016) ........................................................ 10

*Taylor v. Vermont Dep't of Educ.*,
313 F.3d 768 (2d Cir. 2002).................................................. 10, 10-11, 11

*W.S. v. Wilmington Area Sch. Dist.,*
No. CV 15-406, 2015 WL 7721840 (W.D. Pa. Nov. 30, 2015)............. 10, 19

**Federal Statutes**

20 U.S.C. § 1400 *et seq.*.................................................................. 3
20 U.S.C. § 1401(23) .................................................................. 8, 17
20 U.S.C. § 1415(i)(2)(A) ................................................................ 18
20 U.S.C. § 1415(i)(3)(A) ................................................................. 4
28 U.S.C. § 1291 ............................................................................. 4
28 U.S.C. § 1331 ............................................................................. 4

**Federal Regulations**

34 C.F.R. § 300.30 ......................................................................... 9
34 C.F.R. § 300.30(b) ................................................................... 17
34 C.F.R. § 300.30(b)(2)....................................................... 9, 12, 14
34 C.F.R. § 300.507(a)(1)................................................................ 8
34 C.F.R. § 300.519 ....................................................................... 9

71 Fed.Reg. 465650 (August 14, 2006)..................................... 9-10

**State Regulations**

23 Pa. C.S. § 5322 ....................................................................... 11
24 P.S. § 13-1302 .......................................................... 5, 14-15, 15

## I.   INTRODUCTION

This case involves the straightforward application of a Department of Education Regulation, implementing the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("IDEA"). In an effort to assist public schools in identifying the appropriate person to serve as a "Parent" under the IDEA, the Department of Education Regulation identifies a list of individuals who may serve as a Parent. The regulation requires that when a judicial decree or order identifies a specific person or persons to act as the "parent" of a child, or to make educational decisions on behalf of a child, then such person or persons shall be determined to be the "parent" for purposes of the IDEA.

Student H.P.-B. has resided with her cousin, Q.T., in the District. When Q.T. initiated a due process complaint under the IDEA, the Pottsgrove School District ("District") moved to dismiss the complaint as Q.T. is not H.P.-B.'s parent pursuant to an existing custody order. There is no dispute that there is such a custody order in place, and Q.T. has not been given legal custody or educational decision-making rights. Although at one time a petition was filed for Q.T. to be given partial legal custody, that petition was never granted. The Hearing Officer examined the custody order at issue, found that Q.T. did not have legal custody, and dismissed Q.T.'s due process complaint. The District Court affirmed, finding that the Hearing Officer's decision was based on the plain text of the regulation.

As the District Court noted – the dismissal of Q.T.'s administrative due process complaint does not mean that H.P.-B. doesn't have IDEA rights, just that they must be prosecuted by the student's legal guardians instead of Q.T. "Dismissing Q.T.'s complaint has no effect on the ability of E.E. or F.P. to file a due process complaint to protect H.P.-B.'s rights." Appx 5.

## II.    STATEMENTS AND SUMMARIES

### A.    Subject Matter and Appellate Jurisdiction

On March 21, 2022, the District Court denied Appellants' appeal of the decision of an administrative hearing officer. Appx 3-5. Appellants filed a timely Notice of Appeal on April 8, 2022. Appx 1.

Appellants' appeal to this Court alleges that the District Court committed legal error in entering judgment for the Pottsgrove School District ("District") on claims brought pursuant to the IDEA. The District Court had jurisdiction pursuant to federal question jurisdiction, 28 U.S.C. § 1331, and pursuant to express authorization in the IDEA, 20 U.S.C. § 1415(i)(3)(A). This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 because this appeal is from a final order of the District Court.

### B.    Statement of Relevant Facts

Q.T., who is a resident of the Pottsgrove School District, is H.P.-B.'s cousin. H.P.-B. is the subject of a custody order dated August 18, 2008. Appx 236. The order grants primary physical and legal custody to H.P.-B.'s grandmother, E.E., a resident

of the School District of Philadelphia. Appx 80. The order was entered without prejudice to the rights of H.P.-B.'s biological parents. H.P.-B.'s biological father is F.P., who resides in the Pottstown[1] School District. Appx 64, 236. There is no court order giving Q.T. any custodial rights over H.P.-B.

H.P.-B. enrolled in the Pottsgrove School District during the 2014-2015 school year. Appx 114. Around the same time, on September 3, 2014, E.E. filed a petition to modify the existing custody order with the Family Court Division in Philadelphia, seeking shared custody with Q.T. so that H.P.-B. could attend school in the Pottsgrove School District. Appx 239-240. The petition to modify custody was never granted and H.P.-B.'s grandmother retained both legal and physical custody. H.P.-B.'s father also retained legal custody. Appx 45; 72, 78, 80-81.  Nonetheless, H.P.-B. remained enrolled in the District.

Q.T. executed two sworn affidavits under Section 13-1302 of the Pennsylvania School Code to enroll H.P.-B. in the Pottsgrove School District during the 2016-2017 and 2017-2018 school years. Appx 237-238. The District continued to enroll H.P.-B. based on Q.T.'s affidavits and permitted Q.T. to complete school paperwork.

On February 25, 2020, H.P.-B. disclosed to her counselor that she was living at her father's residence, which is outside of the Pottsgrove School District

---

[1] Pottstown is the neighboring school district to Pottsgrove.

boundaries. Appx 59. The District's social worker followed up with H.P.-B's father,

F.P., and he confirmed that H.P-B. was residing with him in the Pottstown School

District and that she had been residing there the entire 2019-2020 school year.  Appx

63-64.

      C.     <u>Issues</u>

          1.     Did the District Court properly uphold the decision of the administrative hearing officer that Q.T. is not H.P-B.'s Parent under the IDEA?

               Proposed Answer: YES

          2.     Did the District Court properly give *Chevron* deference to the Department of Education's Regulation identifying who may serve as a parent?

               Proposed Answer: YES

      D.     <u>Related Cases and Proceedings</u>

This matter has not been before this Court. Appellee is unaware of any other

case or proceeding that is related to the instant case.

      E.     <u>Concise Statement of the Case</u>

The Hearing Officer dismissed Q.T.'s due process complaint because she

lacked standing as a "Parent" under the IDEA. While an adult cousin may qualify as

a "Parent" under the IDEA, the regulations promulgated by the Department of

Education provide that when a custody order is in place, that order determines who

shall be recognized as the "Parent" for IDEA purposes. Since there is a custody order

in place here, and Q.T. is not the individual with educational decision making rights, the Hearing Officer dismissed Q.T.'s complaint. The District Court affirmed, explaining that the IDEA regulation controls when a custody order is in place and that Q.T. does not have legal custody. The due process complaint would have to be filed by E.E. or F.P. – the individuals with legal custody over H.P.-B.

## III.    STANDARD OF REVIEW

In cases arising under the IDEA, this court uses a "*modified de novo*" standard of review, giving "due weight" and deference to the findings in the administrative proceedings." *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 734 (3d Cir. 2009) (citing *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)). As with the District Court, the factual findings from the administrative proceedings are to be considered prima facie correct, and if this Court does not adhere to those findings, the Court must explain why. *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003).

This Court exercises plenary review over the District Court's conclusions of law, and "with respect to the question [of] whether the District Court applied the correct legal standards under the IDEA," *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 268 (3d Cir. 2012), citing *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.,* 381 F.3d 194, 199 (3d Cir. 2004); *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010).

## IV.    ARGUMENT

### A.    The District Court Properly Found that Q.T. is not H.P-B.'s Parent under the IDEA Regulation

The District Court properly found that Q.T. is not H.P-B.'s Parent under the IDEA regulation. A custody order is in place giving H.P.-B.'s father (F.P.) and H.P.-B.'s grandmother (E.E.) legal custody. The Department of Education's regulations state that when such an order is in place that those individuals with legal custody shall be determined to be the Parent for IDEA purposes. The District Court correctly applied this straightforward regulation and affirmed the Hearing Officer's dismissal of Q.T.'s due process complaint. The District Court did not err.

### 1.    The Regulation At Issue

The IDEA defines the term "Parent" broadly – to include not just natural or adoptive parents, but also to include guardians and individuals acting in place of a natural or adoptive parent. 20 U.S.C. § 1401(23). The federal regulations promulgated under the IDEA provide that only "a parent" or a public agency may file a due process complaint regarding the matters described by those regulations. 34 C.F.R. § 300.507(a)(1). Clearly, the intent of this regulation is not to make it difficult to identify an individual who can speak up for a student, since the word "parent" is defined inclusively:

(a)    Parent means –

    (1)    A biological or adoptive parent of a child;

    (2)    A foster parent, unless State law, regulations, or contractual obligations with a State or local entity prohibit a foster parent from acting as a parent;

    (3)    A guardian generally authorized to act as the child's parent, or authorized to make educational decisions for the child (but not the State if the child is a ward of the State);

    (4)    An individual acting in the place of a biological or adoptive parent (including a grandparent, stepparent, or other relative) with whom the child lives, or an individual who is legally responsible for the child's welfare; or

    (5)    A surrogate parent who has been appointed in accordance with §300.519 or section 639(a)(5) of the Act.

34 C.F.R. § 300.30.

Crucially, however, the regulation quoted above goes on to specify:

If a judicial decree or order identifies a specific person or persons under paragraphs (a)(1) through (4) of this section to act as the "parent" of a child or to make educational decisions on behalf of a child, then such person or persons shall be determined to be the "parent" for purposes of this section.

34 C.F.R. § 300.30(b)(2). The purpose of this regulation is to "assist schools and public agencies in identifying the appropriate person to serve as the parent[,]…especially in those difficult situations in which more than one individual

wants to make educational decisions." 71 Fed. Reg. 465650 at 46567 (Aug. 14, 2006). The regulation respects the authority of courts to make such legal custody determinations, without leaving "these decisions to school administrators." *Id.*

Although not common, it is not unprecedented for a due process complaint to be dismissed because the complainant lacks the requisite custody to make educational decisions. In *W.S. v. Wilmington Area Sch. Dist.*, No. CV 15-406, 2015 WL 7721840 (W.D. Pa. Nov. 30, 2015), a case relied upon by the Hearing Officer here, the District Court for the Western District of Pennsylvania granted a school district's motion to dismiss an IDEA case brought by a non-custodial parent, writing: "Because Mother cannot claim she has the necessary custody status, Mother lacks standing under the IDEA." *Id.* at *8. A number of courts have addressed the same issue, each coming to the same conclusion that a non-custodial parent lacks standing under the IDEA to bring a due process complaint. *See Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 779 (2d Cir. 2002); *Fuentes v. Bd. of Educ. of City of New York*, 569 F.3d 46, 47 (2d Cir. 2009); *Smith v. Meeks*, 225 F. Supp. 3d 696, 705 (N.D. Ill. 2016), *Driessen v. Lockman*, No. 11-23081-CV, 2012 WL 12892214, at *4 (S.D. Fla. June 8, 2012), aff'd, 518 F. App'x 809 (11th Cir. 2013).

A common thread in each of the cases above is that each court looks to state law to determine whether the purported "parent" has the requisite legal custody necessary to make educational decisions. As the 2nd Circuit Court of Appeals

explained in *Taylor*, the IDEA regulations do not guarantee the right to sue under the IDEA to any and every individual who might be defined as a parent under its language:

> The regulation does not purport to list all those who are granted rights under the statute. In fact, by using the disjunctive, it indicates exactly the opposite – that the listed persons may or may not be entitled to exercise parental rights under the statute. Hence, the natural reading is that the federal regulation establishes a range of persons who *may* be considered a parent for purposes of the IDEA, but does not require that any and all such persons *must* be granted statutory rights.

313 F.3d at 778.

Then, as to how to determine which person would actually be granted statutory rights as a "parent" in a particular case, the *Taylor* court decided:

> The only way to read the regulation so that it is intelligible is with reference to state law. The regulation does not establish a method for choosing which of the possible parents is entitled to exercise rights under the statute. Given the nature of the statutory scheme, we look to state law to fill this gap and to establish which potential parent has authority to make special education decisions for the child.

*Id.* at 779. In Pennsylvania, when an individual is granted "legal custody" – such custody includes the right to make major decisions on behalf of a child, including medical, religious, and educational decisions. 23 Pa. C.S. § 5322.

2.    Application of the Law

The administrative record supports the Hearing Officer and District Court's determination that Q.T., as H.P.-B.'s cousin, does not have the legal authority to bring a due process complaint as a "Parent" under the IDEA. The Hearing Officer reasoned that because there is a court order in place awarding E.E. legal custody, that E.E. is the person who is properly H.P.-B.'s "Parent" under IDEA regulations. 34 C.F.R. § 300.30(b)(2). The Hearing Officer noted that while at one time a court petition was filed to grant Q.T. such shared legal custody, the petition was never granted. Notably, despite testimony from Q.T., E.E., and F.P. at the due process hearing, no one could explain why such petition was never granted. Appx 50. This led the Hearing Officer to conclude that the testimony by E.E., Q.T., and F.P. was not credible and not persuasive. *Id.*

The key facts relied upon by the Hearing Officer are undisputed. Q.T. does not have legal custody over H.P.-B. A court order gives E.E. legal custody. Therefore, Q.T. does not have the legal authority to bring a due process complaint on behalf of H.P.-B.

3.    Appellants' Claims of Error

Appellants claim that Section 300.30(b)(2) acts only as a "tiebreaker when multiple qualified 'parents' are competing with each other to act on behalf of the same child." Doc 21 p.23. Appellants argue that the regulation applies only when

there is "inter-parent competition." Doc 21 p.31. But Appellants do not point to a single case that has ever held the same to be true. To the contrary, the cases cited herein repeatedly show that proper application of the IDEA's standing provisions requires courts to reject standing by those without the requisite legal custody when a custody order is in place. To fail to do so is contrary not just to the plain text of the regulation, but to common sense.

Appellants' theory flaunts the authority of the state court judges who get to determine who has legal custody and who does not. Under Appellants' theory, an individual who has been denied legal custody by a state court judge could file a due process complaint under the IDEA because they would still be acting as a "parent". So long as the custodial parent does not "compete" to be the decision maker in such a hearing, the non-custodial parent can then prosecute the case – despite (and in contravention of) the state court's order. Similarly, under Appellants' theory a grandparent could file a due process complaint alleging that a student was denied an appropriate education under the IDEA despite the fact that the student's mother has been awarded sole legal custody. It defies logic to suggest that the school district must accept the complaint and desires of the grandparent instead of relying upon the court-approved custody order. The very purpose of the regulation is to assist public schools so that they don't have to make such decisions – and can instead simply rely upon the party with legal custody. Contrary to Appellants' suggestions – the District

does not seek "free rein" to decide who qualifies as a parent under the IDEA. *See* Doc 21 p.31. The District simply seeks to follow an existing custody order - one that has already determined who has educational decision making rights. Q.T. has no such rights[2].

Appellants allege that because the regulation uses the language "shall be determined to be the Parent" that it contemplates "a decision maker who is doing the determining." Doc 21 p.27. But the regulation does not use the word "determine" – as Appellants suggest – rather, it states that the person named in the custody order "shall be determined to be the parent" for IDEA purposes. 34 C.F.R. § 300.30(b)(2). The use of the past tense "determined" shows that the decision has already been made – by the court that has issued the custody order. The use of the word "determined" hardly suggests a decision-making role to determine which parents have decision making rights. Rather, because there is already an order in place awarding legal custody, the regulation simply requires that such an order control in such situations.

Further, Appellants claim that because the District had previously issued paperwork to Q.T., including IDEA related paperwork, that the District Court and Hearing Officer erred in not finding Q.T. the Parent for IDEA purposes. Under

---

[2] Nor, without legal custody, does Q.T. have the authority to enter into a settlement agreement on behalf of H.P.-B.

Pennsylvania law, H.P.-B. was permitted to enroll while residing with her cousin under 24 P.S. §13-1302. App 237-240. But on February 25, 2020 – H.P.-B. informed her counselor that she was residing with her father in a neighboring school district. Appx 59. The District's social worker spoke to H.P.-B.'s father, ***who confirmed that H.P.-B. had been living with him during that school year***. Appx 63-64. Her father, unlike Q.T., has legal custody. When Q.T. filed her due process complaint three weeks later on March 8, 2020, the District immediately referred to the custody order – given the student's statements about residing with her father and the father's confirming statements. Appx 247. The District moved to dismiss the due process complaint for lack of standing, and the Hearing Officer agreed. It is both logical and understandable that in February 2020 the District stopped treating Q.T. as the responsible adult under 24 P.S. § 13-1302 when both H.P.-B. and her father were indicating that she was living with him, and he has legal custody.

Finally, Appellants allege that the District has "no role or cognizable interest in the question of who speaks for H.P.-B., and it cannot suffer any prejudice to its legal interest under the IDEA by Q.T.'s representation of H.P.-B. in this case." Doc 21 p.21. But the District does have such an interest. Appellants would have the school district addressing IDEA inquiries, requests for IEP meetings, evaluation requests, and due process requests from grandparents, cousins, step-parents, and others without parent rights, even if there is a custody order in place. If Appellants'

theory is adopted, the universe of interested parties and potential conflict grows significantly – along with the inevitable questions that come along with such rights. For example, should the District go along with what the grandparent wants in an IEP meeting if the custodial Parent is not objecting? What if the Parent later objects to what the grandparent had sought? This precise situation is what the IDEA regulations seek to avoid – so that schools have clear guidance on who is a parent when a custody order is in place.

B.   The District Court Properly Gave *Chevron* Deference to the Department of Education's Regulation

The District Court properly gave *Chevron* deference to the Department of Education's regulation. When an agency issues regulations interpreting a statute it enforces, that interpretation receives deference from the courts if the statute is ambiguous and if the agency's interpretation is reasonable. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 220 (2016) (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–44 (1984)). *Chevron* requires a two-step analysis, "At the first step, a court must determine whether Congress has 'directly spoken to the precise question at issue.' If so, 'that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.' If not, then at the second step the court must defer to the agency's interpretation if it is 'reasonable.'" *Id.*

Here, the District Court concluded that Congress did not speak on the precise question at issue, as the regulations go further than the statute, and provide a framework for determining who should be designated the "parent" when multiple individuals could serve as a parent. Appx 4. In step two, the District Court found that the agency's interpretation of the regulation is reasonable, and based upon a permissible construction of the statute. *Id.* Because the purpose of the regulation is to "assist schools and public agencies", to the ultimate benefit of children the IDEA was enacted to help – the District Court found no reason to invalidate the regulation. *Id.*

Appellants do not allege that the District Court failed to apply the proper law, only that the Court reached the wrong conclusion. They allege, again without citation to any legal authority finding so, that 34 C.F.R. § 300.30(b) only applies when there is a conflict among potential "parents" and to find otherwise is an "unreasonable interpretation of 20 U.S.C. § 1401(23). Given that the plain text of the regulation does not require a conflict among potential "parents", the District Court's analysis here is sound. The District Court gave the proper *Chevron* deference to the regulation.

Finally – Appellants allege that E.E. cannot represent H.P-B. because she "is not acquainted with H.P.-B.'s educational needs *and* she wishes Q.T. to be the representative." Doc 21 p.34. Appellants provide no citation to the record where

such facts are established; these allegations appear here for the first time. But even if such facts were in the record, the proper remedy is for E.E. and Q.T. to follow through on the petition they previously filed in the Court of Common Pleas seeking to modify the current custody order. Appx 239-240. Both the Hearing Officer and the District Court were compelled to apply the current custody order to the IDEA regulation, under which Q.T. does not have legal custody.

C.     E.E. and F.P. Are Not Proper Plaintiffs/Appellants

The District Court dismissed Appellants' appeal without the need to consider the District's secondary argument that E.E. and F.P. did not have standing to bring the Federal Complaint. Federal courts only have jurisdiction over the appeal of IDEA claims that have been exhausted at the administrative level. 20 U.S.C. § 1415(i)(2)(A); *Batchelor v. Rose Tree Media Sch. Dist.,* 759 F.3d 266, 272 (3d Cir. 2014). E.E. and F.P. have never been parties to any matter before the administrative Hearing Officer. Nor did the Hearing Officer deny them anything at the administrative level. Because F.P. and E.E. failed to exhaust administrative remedies, their claims should be dismissed for this additional reason.

D.     Appellants Have a Straightforward Remedy

Dismissing Q.T.'s administrative due process complaint does not mean that H.P.-B. doesn't have IDEA rights, just that they must be prosecuted by E.E. or F.P. instead of Q.T. Dismissing Q.T.'s administrative complaint has no effect on the

ability of E.E. or F.P. to file a due process complaint to protect H.P.-B.'s rights. See

*W.S. v. Wilmington Area Sch. Dist.*, No. CV 15-406, 2015 WL 7721840, at *8 (W.D.

Pa. Nov. 30, 2015). The District Court noted the same, explaining that the court was

"perplexed" as to why counsel did not simply amend Q.T.'s administrative

complaint to include the proper plaintiff when made aware of the regulation in May

2020. Instead, Appellants have embarked upon a multi-year appeal to reverse the

Hearing Officer's application of a straightforward regulation. While Appellants now

have concerns about the statute of limitations[3] should they refile a due process

complaint at this late date, it was certainly a gamble they knowingly chose to take

when pursuing this appeal, and it is not a reason to disregard the Hearing Officer and

District Court's sound legal decisions.

## V.    CONCLUSION

For the foregoing reasons, the Appellee Pottsgrove School District

respectfully requests that the District Court's Order be affirmed, and that Judgment

be entered in favor of the Appellee on all claims.

Respectfully submitted,

Date: <u>October 31, 2022</u>        By: <u>        /s/ Mark W. Cheramie Walz        </u>
                                    Mark W. Cheramie Walz, Esquire – PA 204356
                                    Rose McHugh, Esquire – PA 316260

                                    Attorneys for Appellee,
                                    Pottsgrove School District

---

[3] *See* Doc 21 p.18.

## CERTIFICATION OF BAR MEMBERSHIP

The undersigned attorneys certify that they have been duly admitted to the bar of this Court.

SWEET, STEVENS, KATZ & WILLIAMS LLP

Date: <u>October 31, 2022</u>    By: _____ <u>*/s/ Mark W. Cheramie Walz*</u> _____
                                       Mark W. Cheramie Walz, Esquire – PA 204356


By: _____ <u>*/s/ Rose E. McHugh*</u> _____
     Rose McHugh, Esquire – PA 316260

Attorneys for Appellee,
Pottsgrove School District

## CERTIFICATION OF COMPLIANCE WITH
## TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS,
## AND TYPE STYLE REQUIREMENTS

The undersigned attorney certifies the following:

1.    this brief complies with the type-volume limit of Fed. R. App. R. 32(a)(7)(B) because it contains 4,008 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and

2.    this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point font, Times New Roman style.

SWEET, STEVENS, KATZ & WILLIAMS LLP

Date: October 31, 2022         By:        /s/ Mark W. Cheramie Walz
                                Mark W. Cheramie Walz, Esquire – PA 204356
                                Rose McHugh, Esquire – PA 316260

                                Attorneys for Appellee,
                                Pottsgrove School District

# CERTIFICATION OF IDENTICAL BRIEFS

The undersigned attorney certifies that the text of the electronic brief filed of record with the Court in pdf format is an identical copy of the brief being provided in hard copy to the Clerk's Office.

SWEET, STEVENS, KATZ & WILLIAMS LLP

Date: October 31, 2022        By:_____ */s/ Mark W. Cheramie Walz*_____
Mark W. Cheramie Walz, Esquire – PA 204356
Rose McHugh, Esquire – PA 316260

Attorneys for Appellee,
Pottsgrove School District

## CERTIFICATION OF VIRUS CHECK

The undersigned attorney certifies that the electronic brief filed of record with the Court has been virus checked using Kaspersky Security 10.1.2 and has proven to be without flaw.

SWEET, STEVENS, KATZ & WILLIAMS LLP

Date: <u>October 31, 2022</u>     By:<u>        /s/ Mark W. Cheramie Walz        </u>
Mark W. Cheramie Walz, Esquire – PA 204356
Rose McHugh, Esquire – PA 316260

Attorneys for Appellee,
Pottsgrove School District

## CERTIFICATE OF FILING AND SERVICE

I, Mark W. Cheramie Walz, Esquire, hereby certify that the foregoing Appellee's Brief is being filed through the CM/ECF system and served electronically. The requisite paper copies of the Appellee's Brief are being delivered to the Clerk's Office within 5 days of the electronic filing. Paper copies of the Appellee's Brief are being provided via first class mail to counsel of record.

SWEET, STEVENS, KATZ & WILLIAMS LLP

Date: October 31, 2022    By: _____/s/ Mark W. Cheramie Walz_____

Mark W. Cheramie Walz, Esquire – PA 204356
Rose McHugh, Esquire – PA 316260

Attorneys for Appellee,
Pottsgrove School District